## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 7 |
| | ) |
| TODD H. MORAN and | ) |
| JENNIFER Y. MORAN, | ) Case No. 08-12684 (CSS) |
| | ) |
| Debtors. | ) |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) |
| WAYNE A. CROWE and | ) |
| DEBORAH A. CROWE, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Adv. Proc. No. 09-50040 (CSS) |
| | ) |
| TODD H. MORAN, | ) Re Docket No. 6 |
| | ) |
| Defendant. | ) |

## OPINION[1]


Eric C. Howard                                        Kevin A. Guerke
Wilson Halbrook & Bayard, P.A.            Seitz Van Ogtrop & Green, P.A.
107 West Market Street                         222 Delaware Avenue, Suite 1500
P.O. Box 690                                           P.O. Box 68
Georgetown, DE  19947                        Wilmington, DE  19899

Counsel for Wayne A. Crowe and        Counsel for Todd H. Moran
Deborah A. Crowe


Dated:  September 11, 2009

Sontchi, J. _____


---

[1] "The court is not required to state findings or conclusions when ruling on a motion under Rule 12 . . . ."  Fed. R. Bankr. P. 7052(a)(3).  Accordingly, the Court herein makes no findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## INTRODUCTION

Before the Court is a motion brought by Todd H. Moran (the "Debtor") to dismiss the amended complaint of Wayne A. Crowe and Deborah A. Crowe (the "Discharge Plaintiffs" or "Crowes") to have debt declared non-discharged in accordance with section 523(a) of the Bankruptcy Code (the "Code"). The Debtor argues that the amended complaint fails to state a claim upon which relief can be granted. For the reasons set forth below, the Court will deny the Debtor's motion to dismiss.

## JURISDICTION

The Court has subject matter jurisdiction under 28 U.S.C. § 1334. Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## STATEMENT OF FACTS

### I.  Factual Background

The Crowes are individuals residing in Felton, Delaware. The Debtor is an individual residing in Dover, Delaware and is the owner of Todd's Custom Building, Inc. The Crowes entered into a contract (the "Contract") with the Debtor to provide labor and materials for the improvement of the Crowes's home (the "Property"). The Debtor was to provide labor and materials for a total price of $83,365. The Crowes paid the Debtor $68,000 on account of the Contract price, leaving a balance of $15,365.

2

The Debtor commenced performance of the Contract on February 5, 2008. His performance was sporadic.  After March 30, 2008, the Debtor and his employees or subcontractors were rarely at the Property.  By June 2008, the Debtor abandoned the project or failed to return to the Property.  On July 16, 2008, the Crowes's counsel formally terminated the contract, based on the Debtor's failure to return.

On September 19, 2008, the Crowes sued the Debtor in the Superior Court of the State of Delaware in and for Sussex County.  The complaint in that action (the "Superior Court Complaint") pled claims for breach of contract and breach of trust.  On October 20, 2008, the Crowes obtained a default judgment against the Debtor in the amount of $59,625 (the "Default Judgment").

## II.  Procedural Background

On November 9, 2008, the Debtor and his wife filed a voluntary chapter 7 bankruptcy petition.  The Crowes filed an adversary complaint on January 21, 2009, seeking to have the debt the Debtor owes them declared as non-discharged in accordance with section 523(a) of the Code.  The debt at issue is based on the Default Judgment.  The complaint in the discharge action referenced the breach of contract and breach of trust claims in the Superior Court Complaint.  In addition, the Crowes asserted new factual allegations and claims that included fraud and breach of fiduciary duty.  The Crowes also contended that the principles of *res judicata* and collateral estoppel barred the Debtor from disputing

whether he breached his fiduciary duties to the Crowes and obtained funds from the Crowes through fraud.

On January 22, 2009, the Crowes filed an amended complaint in the discharge action (the "Bankruptcy Complaint"). The Court entered an order to discharge joint debts under section 727 of the Code on February 18, 2009. On April 15, 2009, the Debtor filed a motion to dismiss the Bankruptcy Complaint, asserting that *res judicata* and collateral estoppel did not help the Crowes. Rather, those doctrines barred the Bankruptcy Complaint. The Crowes opposed the motion to dismiss. Briefing is complete and this matter is ripe for decision.

## LEGAL DISCUSSION

### I. Legal Standard On A Motion To Dismiss

A motion under Rule 12(b)(6) serves to test the sufficiency of the factual allegations in the plaintiff's complaint.[2] Under Federal Rule of Civil Procedure 8(a)(2), which is applicable in adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7008, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."[3] This pleading standard does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation.[4] A pleading that offers "labels and conclusions or a formulaic recitation of the

---

[2] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

[3] Fed. R. Civ. P. 8(a)(2).

[4] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007)).

elements of a cause of action will not do."  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."[5]

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."[6] A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"[7]

In deciding a motion to dismiss, the Court must "accept all factual allegations in the complaint as true."[8]  However, this tenet is inapplicable to legal conclusions.[9]  Furthermore, threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.[10]

The Court will "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint,

---

[5] *Id.* (internal citations omitted).

[6] *Id.* (internal citations omitted).

[7] *Id.* (internal citations omitted).

[8] *Winer Family Trust v. Queen*, 503 F.3d 319, 327 (3d Cir. 2007).

[9] *Iqbal*, 129 S. Ct. at 1949.

[10] *Id.* at 1949-50 (internal citations omitted).

the plaintiff may be entitled to relief."[11]  "The issue is not whether a plaintiff will ultimately prevail but whether he or she is entitled to offer evidence to support the claims."[12]  Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.[13]

The Court may consider documents attached as exhibits to the Bankruptcy Complaint and any documents incorporated into the Bankruptcy Complaint by reference.  The Court may also consider matters of which it may take judicial notice.[14]  In considering the documents attached to the Bankruptcy Complaint, "if the allegations of [the] complaint are contradicted by documents made a part thereof, the document controls and the Court need not accept as true the allegations of the complaint."[15]

Furthermore, complaints asserting claims for fraud must meet a heightened pleading standard.  Federal Rule of Civil Procedure Rule 9(b), which applies in adversary proceedings under Federal Rule of Bankruptcy Procedure 7009, requires these complaints to set forth facts with sufficient particularity to

---

[11] *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

[12] *Ballentine v. U.S.*, 2006 U.S. Dist. LEXIS 96631, at *4 (D.V.I., Oct. 15, 2001), *aff'd, Ballentine v. U.S.*, 486 F.3d 806, 810 (3d Cir. 2007) (*quoting Oatway v. Am. Int'l Group, Inc.*, 325 F.3d 184, 187 (3d Cir. 2003)).

[13] *Iqbal*, 129 S. Ct. at 1950 (internal citations omitted).

[14] *In re Fruehauf Trail Corp.*, 250 B.R. 168, 183 (Bankr. D. Del. 2000) (*citing PBGC v. White*, 998 F.2d 1192, 1196 (3d Cir. 1993)).  The Court takes judicial notice of the Contract, the Superior Court Complaint, the Default Judgment, and the new factual allegations pleaded in the Bankruptcy Complaint.

[15] *Sierra Invs., LLC v. SHC, Inc. (In re SHC, Inc.)*, 329 B.R. 438, 442 (Bankr. D. Del. 2005).

apprise the defendant of the charges against him so that he may prepare an adequate answer.[16]  To provide fair notice, the complaint must go beyond merely quoting the relevant statute.[17]  The Third Circuit has explained the purpose of the particularity requirements of Rule 9(b) as follows:

> Rule 9(b) requires plaintiffs to plead with particularity the "circumstances" of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.  It is certainly true that allegations of "date, place or time" fulfill these functions, but nothing in the rule requires them.  Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud.[18]

## II. R*es Judicata* Does Not Prevent The Crowes From Objecting To The Discharge Of The Debt The Debtor Owes Them

Under federal law, "judicial proceedings . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State . . . from which they are taken."[19]  Thus, section 1738 requires federal courts to give *res judicata* effect to a state court judgment to the extent the state would give its own prior judgment such effect.[20]  *Res judicata*, however, is an affirmative defense,[21]

---

[16] *See Global Link Liquidating Trust v. Avantel, S.A. (In re Global Link Telecom Corp.)*, 327 B.R. 711, 718 (Bankr. D. Del. 2005).

[17] *Id. See also Burtch v. Dent (In re Circle Y of Yoakum, Texas)*, 354 B.R. 349, 356 (Bankr. D. Del. 2006).

[18] *Seville Indus. Mach. Corp. v. Southernmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).

[19] 28 U.S.C. § 1738.

[20] *Davis v. U.S. Steel Supply*, 688 F.2d 166, 170 (3d Cir. 1982) (en banc), *cert. denied*, 460 U.S. 1014, 103 S. Ct. 1256, 75 L. Ed. 2d 484 (1983).

[21] *See* Fed. R. Civ. P. 8(c).

and the party asserting such a bar bears the burden of showing that it applies.[22] The Crowes obtained their default judgment in Delaware state court.  Therefore, the Court will apply Delaware law to determine whether or not *res judicata* precludes the Crowes from maintaining this adversary proceeding.

The doctrine of *res judicata* forecloses a party from bringing a second suit based on the same cause of action after a judgment has been entered in a prior suit involving the same parties.[23]  "The procedural 'bar of *res judicata* extends to all issues which might have been raised and decided in the first suit as well as to all issues that actually were decided.'"[24]  In Delaware, *res judicata* operates to bar a claim when the following five-part test is satisfied:

> (1) the original court had jurisdiction over the subject matter and the parties;
>
> (2) the parties to the original action were the same as those parties, or in privity, in the case at bar;
>
> (3) the original causes of action or the issues decided were the same as those in the case at bar;
>
> (4) the issues in the prior action must have been decided adversely to the plaintiffs' contentions in the instant case; and
>
> (5) the decree in the prior action was a final decree.[25]

---

[22] *U.S. Steel Supply*, 688 F.2d at 170.

[23] *Betts v. Townsends, Inc.*, 765 A.2d 531, 534 (Del. 2000) (internal citations omitted).

[24] *LaPoint v. Amerisourcebergen Corp.*, 970 A.2d 185, 191-92 (Del. 2009) (internal citations omitted).

[25] *Id.* at 192.  *See also Bailey v. City of Wilmington*, 766 A.2d 477, 481 (Del. 2001).

Delaware, like the federal courts, follows a transactional approach to *res judicata*.[26]   Determining whether two claims arise from the same transaction requires pragmatic consideration,

> [with the fact finder] giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.[27]

Two claims "derive[d] from a common nucleus of operative fact[s]" arise from the same transaction.[28]   Generally, a contract is considered to be a single "transaction" for the purpose of claim preclusion.[29]

When a <u>defendant</u> claims that the doctrine of *res judicata* bars the subsequent action, he or she must show two things.  First, the same transaction must form the basis for the prior and subsequent suits.[30]  Second, the plaintiff must have neglected or failed to assert claims which in fairness should have been asserted in the first action.[31]   Upon such a showing, the plaintiff, to prevent dismissal, must then show that there was some impediment to the presentation of the entire claim for relief in the prior forum.[32]

---

[26] *Id.* at 193 (internal citations omitted).

[27] *Id.* (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24 (1982)).

[28] *Id.* (quoting *Maldonado v. Flynn*, 417 A.2d 378, 383 (Del. Ch. 1980)).

[29] *Id.* at 194 (quoting *Petromanagement Corp. v. Acme-Thomas Joint Venture*, 835 F.2d 1329, 1336 (10th Cir. 1988)).

[30] *Id.* at 193 (internal citations omitted).

[31] *Id.* at 193-94 (internal citations omitted).

[32] *Kossol v. Ashton Condominium Ass'n*, 1994 WL 10861, at *2 (quoting *Maldonado*, 417 A.2d at 383-84).

The Court finds that *res judicata* does not bar the Crowes from asserting their section 523(a)(2) and (a)(4) claims.  Even if the Court were to find that the contract and/or the Debtor's conduct in performing (or not performing) the contract forms the basis for both the present and former suit, the Court cannot find that the Crowes "neglected or failed to assert claims which in fairness should have been asserted in the first action"[33] because state courts cannot determine whether debts of a kind specified in sections 523(a)(2) and (a)(4) are non-dischargeable in bankruptcy.

The Supreme Court and the Third Circuit have found that Congress intended to leave certain discharge questions in the exclusive jurisdiction of the bankruptcy courts.[34]  In *Brown v. Felsen*, the Supreme Court held that when issues arising in a state proceeding implicate the provision of federal bankruptcy laws that preclude discharge of claims based on fraud, "the state-law concept is likely to differ from that adopted in the federal statute."[35]  Additionally, the parties would have little incentive to litigate the issues in a state proceeding that are not identical to those arising under the federal bankruptcy laws.  The *Felsen* court

---

[33] *LaPoint*, 970 A.2d at 193-94 (quoting *id.* at *2).

[34] *See Grogan v. Garner*, 111 S. Ct. 654, 658 n.10, (1991) (citing *Brown v. Felsen*, 99 S. Ct. 2205, 2211-12, (1979); S. REP. NO. 91-1173, pp. 2-3 (1970); H. R. REP. NO. 91-1502, p. 1 (1970), U.S. Code Cong. & Admin. News 1970, p. 4156); *Graham v. Internal Revenue Service*, 973 F.2d 1089, 1095 (3d Cir. 1992).  *Cf. Logan v. Credit Gen. Ins. Co. (In re PRS Ins. Group, Inc.)*, 335 B.R. 77, 84 (Bankr. D. Del. 2005) ("The allowance and disallowance of claims, which are core matters arising under or in the Bankruptcy Code, fall within the exclusive jurisdiction of the bankruptcy courts.").

[35] *Felsen*, 99 S. Ct. at 2211.

concluded that allowing state courts to decide questions Congress wanted to commit to bankruptcy courts would disturb the federal bankruptcy scheme.[36]

Since the bankruptcy court has such exclusive jurisdiction, the Delaware state court lacked jurisdiction to resolve these claims. As a result, the Crowes could not have resolved their non-dischargeability claims in Delaware state court, and the Default Judgment cannot preclude their allegations of fraud and breach of fiduciary duty.

The Court also holds that the claim at issue here is the Debtor's right to discharge in bankruptcy, not the Crowes's objection to that claim. Rather, the Crowes's allegations of fraud and breach of fiduciary duty are defenses or objections to this Court's grant of relief to the Debtor. The Third Circuit's analysis of Supreme Court precedent in *Graham v. Internal Revenue Service* is instructive on this issue. There, the Internal Revenue Service ("IRS") appealed a district court order affirming a bankruptcy court decision discharging the debtors from liability for federal income taxes and a concomitant fraud penalty.[37] The IRS contended that an earlier final judgment of the United States Tax Court holding the debtors liable for income tax deficiencies resulting from fraudulent tax returns (a circumstance which would preclude discharge) was controlling on the discharge issue.[38]

---

[36] *Id.* at 2211-2213.

[37] *Graham*, 973 F.2d at 1091.

[38] *Id.*

The Third Circuit found that Congress intended to reserve dischargeability questions exclusively for the bankruptcy court. As a result, the Tax Court's prior judgment was immaterial on the issue of non-dischargeability.[39] The IRS attempted to avoid this problem by narrowly defining the claim subject to preclusion as fraud, not discharge.[40]

The Third Circuit found that the Supreme Court's reasoning in *Felsen* precluded this narrow definition.[41] In that case, Felsen had (like the IRS) contended that claim preclusion applied because the fraud question could have been litigated in the prior proceeding.[42] The Supreme Court rejected this argument and defined the claim at issue as the debtor's right to discharge. Furthermore, in the part of its decision that dealt with Congress' intention to leave dischargeability questions exclusively to the bankruptcy courts, the Supreme Court focused on the debtor's claim to discharge, not the creditor's claim that fraud barred discharge.[43]

Based upon this logic, the Third Circuit held that when a debtor seeks discharge in bankruptcy, his claim to that remedy is the claim at issue, and fraud by the debtor is one of several potential defenses or objections to the bankruptcy court's grant of relief to the debtor. The claim is the debtor's right to discharge,

---

[39] *Id.*

[40] *Id.* at 1096.

[41] *Id.*

[42] *Id.* (quoting *Felsen*, 99 S. Ct. at 2210).

[43] *Id.* (quoting *Felsen*, 99 S. Ct. at 2211-12).

not the creditor's objection, based on fraud, to discharge.[44]  For these reasons, the

Court finds that *res judicata* does not preclude the Crowes from maintaining this

adversary proceeding based upon allegations of fraud and breach of fiduciary

duty.

### III. Collateral Estoppel Does Not Preclude The Crowes From Litigating The Issues Of Fraud And Breach Of Fiduciary Duty In This Adversary Proceeding

The doctrine of collateral estoppel is embodied in the constitutional

guarantee against double jeopardy.  The Fifth Amendment guarantees,

> that the state with all its resources and power [shall] not be allowed
> to make repeated attempts to convict an individual for an alleged
> offense, thereby subjecting him to embarrassment, expense and
> ordeal and compelling him to live in a continuing state of anxiety
> and insecurity.[45]

Based upon this guarantee, "once a court has decided an issue of fact or law

necessary to its judgment, that decision may preclude relitigation of the issue in a

suit on a different cause of action involving a party to the first case."[46]  The

burden is on a defendant to demonstrate that the issue in relitigation was

actually decided in the first proceeding.[47]

---

[44] *Id.*

[45] *Green v. U.S.*, 78 S. Ct. 221, 223 (1957).

[46] *Bailey v. Ness*, 733 F.2d 279, 281 (3d Cir. 1984) (quoting *Allen v. McCurry*, 101 S. Ct. 411, 414, (1980)).

[47] *Dowling v. U.S.*, 110 S. Ct. 668 (1990).

The principles of collateral estoppel apply in discharge proceedings in bankruptcy court.[48]  Moreover, as discussed above, under federal law, "judicial proceedings . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State . . . from which they are taken."[49]  Thus, where a party seeks to rely on a state court judgment to preclude relitigation of the same issues in federal court, a federal court must look to state law and its assessment of the collateral estoppel doctrine to determine the extent to which the state would give its own judgment collateral estoppel effect.[50]  Here, the Crowes obtained their default judgment in Delaware state court.  Therefore, the Court will apply Delaware law to determine whether or not collateral estoppel bars the relitigation of issues in this adversary proceeding.

When analyzing whether collateral estoppel applies, Delaware state courts must determine whether:

1.  the issue previously decided is identical with the one presented in the action in question;

2.  the prior action has been finally adjudicated on the merits;

3.  the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication; and

---

[48] *Wolstein v. Docteroff (In re Docteroff)*, 133 F.3d 210, 214 (3d Cir. 1997) (citing *Grogan*, 498 U.S. at 284-85 n.11 ("We now clarify that collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a).")).

[49] 28 U.S.C. § 1738.

[50] *Ness*, 733 F.2d at 281 (citing *U.S. Steel Supply*, 688 F.2d at 170).

    4.   the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.[51]

Finally, Delaware courts have held that a default judgment will not operate to bar relitigation of the issues in a prior proceeding, where the subsequent proceeding is based upon a different cause of action.[52] In Delaware, when a default judgment is issued, the issues raised in that proceeding are not "actually litigated and determined . . . and, therefore, the prior judgment is not conclusive and binding upon the parties as to those issues in . . . a different cause of action."[53] For these reasons, "an issue raised in a proceeding which was eventually decided by default can be relitigated in a subsequent proceeding."[54]

The Court finds that collateral estoppel does not prevent the Crowes from litigating the issues of fraud and breach of fiduciary duty in this adversary proceeding. The Default Judgment was based on causes of action for breach of contract and breach of trust. The Bankruptcy Complaint is based upon the Crowes's objection to the Debtor's right to discharge from his debt to them. Therefore, the Crowes have initiated an adversary proceeding based upon a different cause of action from that in the Superior Court of the State of Delaware. Accordingly, the Default Judgment is not conclusive and binding upon the parties as to the issues in this proceeding. The Crowes may allege fraud and

---

[51] *Betts*, 765 A.2d at 535 (quoting *State v. Machin*, 642 A.2d 1235, 1239 (Del. Super. Ct. 1993)).

[52] *See Petrucci v. Landon*, 107 A.2d 236, 239 (Del. Super. Ct. 1954); *Machin*, 642 A.2d at 1240.

[53] *Petrucci*, 107 A.2d at 239; *see also Machin*, 642 A.2d at 1239.

[54] *Machin*, 642 A.2d at 1240.

breach of fiduciary duty in the Bankruptcy Complaint, even though they failed to assert claims for relief based on similar allegations in the Superior Court Complaint.

## IV. The Court Will Deny The Debtor's Motion To Dismiss The Crowes Claim For Relief Under 11 U.S.C. § 523(a)(2)

Section 523(a) of the Code provides for certain exceptions to discharge of claims, including those incurred by the debtor under false pretenses or through fraud:

> (a) A discharge under section 727, 1141, 1128(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-
>
> . . .
>
>> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by –
>>
>>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . . .[55]

The burden of proving that a debt is non-dischargeable under section 523 is upon the creditor, who must establish entitlement to an exception by a preponderance of the evidence.[56]

A creditor seeking an exception to a debtor's discharge under section 523(a)(2)(A) must prove that:

1.  the debtor made the misrepresentations or perpetrated fraud;

---

[55] 11 U.S.C. § 523(a)(2)(A).

[56] *Grogan*, 498 U.S. at 287-88; *Ins. Co. of N. Am v. Cohn (In re Cohn)*, 54 F.3d 1108, 1114 (3d Cir. 1995).

2.  the debtor knew at the time that the representations were false;

3.  the debtor made the misrepresentations with the intention and purpose of deceiving the creditor;

4.  the creditor [justifiably] relied on such misrepresentations; and

5.  the creditor sustained loss and damages as a proximate result of the misrepresentations having been made.[57]

Justifiable (versus reasonable) reliance requires that the Court apply a subjective rather than objective reasonable person standard; that is, the Court must take into account a plaintiff's particular "qualities and characteristics." The justifiable reliance inquiry is essentially a "facts and circumstances" test of the particular case and particular creditor.[58]

The Court will deny the Debtor's motion to dismiss because the Crowes have stated a valid claim for relief under section 523(a)(2). The Bankruptcy Complaint satisfies the elements of misrepresentation or perpetuated fraud and knowledge that the representations were false when it alleges that,

> [The Debtor] affirmatively represented to [the Crowes] in response to questioning from them that he had purchased and paid for materials with money [the Crowes] paid to him, but that the materials had not yet been delivered or were stored off site (particularly, [the Debtor] represented to [the Crowes] that he had ordered and paid for materials with Wyoming Millwork, Delaware Brick, Delmarva Sash and Door, Lowes [sic] and Air Base Carpet and Tile); such representations were false and [the Debtor] at the time of making those representations knew they were false.

---

[57] *Webber v. Giarratano*, 299 B.R. 328, 334 (Bankr. D. Del. 2003) (citing *Field v. Mans*, 516 U.S. 59, 70-71, 116 S. Ct. 437, 133 L. Ed. 2d 351 (1995) (holding that the proper measure for reliance is not the objective or "reasonable" standard, but a less demanding "justifiable" reliance standard)).

[58] *Id*. (internal citations omitted).

The Bankruptcy Complaint also alleges that "contrary to direct representations [the Debtor] made to [the Crowes] that he had used those funds to purchase materials that were not yet delivered to the job site, [the Debtor] used funds [the Crowes] paid to him personally rather than to pay for labor and materials for the project."  When one reads this allegation in conjunction with the allegation that "[the Debtor's] representations . . . were false and [the Debtor] knew they were false at the time he made them," one can reasonably infer that the Debtor intentionally lied to the Crowes so that he could continue using their payments for his personal needs.

The justifiable reliance element is met when the Bankruptcy Complaint alleges,

> Based on [the Debtor's] representations that he was using [the Crowes's] monies paid to him to purchase materials for the project, which representations were false and [the Debtor] knew they were false at the time he made them, [the Crowes] continued to make payments to [the Debtor].

Since the Crowes did not know the Debtor was deceiving them and had no reason to think otherwise, the "facts and circumstances" of this particular case (as alleged in the Bankruptcy Complaint) warrant the Crowes's justified reliance on the Debtor's statements.

Finally, the Bankruptcy Complaint alleges damages in the amount of $52,635.00, "[a]s a result of [the Debtor's] . . . obtaining of money under false pretenses . . . ."  Assuming all of the aforementioned allegations are true, the

Crowes have satisfied *Giarratano*'s elements necessary to prove entitlement to relief under section 523(a)(2)(A).

The Bankruptcy Complaint has also pleaded sufficient factual content to allow the Court to draw the reasonable inference that the Debtor is liable for fraud. According to the Bankruptcy Complaint, the money paid from the Crowes to the Debtor "[was] paid to [the Debtor] in trust to be used for the payment of the cost of labor and materials provided or to be provided for the project." The fact that the Crowes alleged awareness of the Debtor's failure to pay at least "three sub-contractors (the painter, the drywaller, and the dumpster provider) who provided labor and materials for the house for which [the Crowes] paid [the Debtor]" supports the inference that the Debtor lied to the Crowes when he told them he was using the money as required under both Delaware law and the contract.

Furthermore, the Court draws the reasonable inference that the Debtor made false statements based on the Crowes's allegation that "[the Debtor] represented to [the Crowes] that he had ordered and paid for materials with Wyoming Millwork, Delaware Brick, Delmarva Sash and Door, Lowes [sic] and Air Base Carpet and Tile . . . ." The Crowes's specificity in naming the Debtor's alleged suppliers leads one to believe it quite plausible that the Debtor did indeed falsely inform the Crowes that he had paid these exact suppliers. For

these reasons, the Bankruptcy Complaint has stated "a claim to relief that is plausible on its face."[59]

Finally, the Court finds that the Crowes's allegations satisfy Rule 9(b)'s heightened requirements for pleading fraud. The Crowes plead their fraud claim with enough specificity to place the Debtor on notice that the precise misconduct he allegedly committed consisted of (1) the false statements made regarding the use of money provided to the Debtor to purchase materials or pay for labor, and (2) the Debtor's actual use of funds paid to him. Moreover, the precise misconduct occurred while the Crowes employed the Debtor to make improvements to their home. The Crowes do not allege "date, place or time," but Rule 9(b) does not require such allegations.[60] The facts alleged by the Crowes are precise enough and detailed enough to substantiate their allegations of fraud. Accordingly, the Court finds that the Crowes have stated a valid claim for relief under section 523(a)(2) and will deny the Debtor's motion to dismiss as to the Crowes's section 523(a)(2) claim.

## V. The Court Will Deny The Debtor's Motion To Dismiss The Crowes's Claim For Relief Under 11 U.S.C. § 523(a)(4)

Section 523(a)(4) of the Bankruptcy Code provides another exception to discharge. The section reads as follows:

> (a) A discharge under section 727, 1141, 1128(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-. . .

---

[59] *Twombly*, 127 S. Ct. 1973-4.

[60] *Seville*, 742 F.2d at 791.

> (4) for fraud or defalcation while acting in a fiduciary
> capacity, embezzlement, or larceny . . . .[61]

The burden of proof is upon the creditor, who must establish entitlement to an exception by a preponderance of the evidence.[62]

Defalcation refers to a failure to produce funds entrusted to a fiduciary and applies to conduct that does not necessarily reach the level of fraud, embezzlement or misappropriation.[63]   Judge Learned Hand first addressed the issue of a "defalcation" in the case of *Central Hanover Bank & Trust Co. v. Herbst*, where he framed, but did not decide the issue:

> "[D]efalcation" may demand some portion of misconduct; we will
> assume *arguendo* that it does.   All we decide is that when a
> fiduciary takes money upon a conditional authority which may be
> revoked and [when the fiduciary] knows at the time that it may, he
> is guilty of a "defalcation" though it may not be a "fraud," or an
> "embezzlement," or perhaps not even a "misappropriation."[64]

Since *Central Hanover Bank*, three lines of authority have developed with respect to the contours of defalcation in section 523(a)(4).[65]   The first view is that an innocent mistake resulting in the failure to fully account for funds handled in a fiduciary capacity can constitute a defalcation.[66]   However, one leading treatise

---

[61] 11 U.S.C. § 523(a)(4).

[62] *Grogan*, 498 U.S. at 287-88; *Cohn*, 54 F.3d at 1114.

[63] 4 COLLIER ON BANKRUPTCY ¶ 523.10[b] (15th ed. 2008); *Quaif v. Johnson*, 4 F.3d 950 (11th Cir. 1993); *see also Hodnett v. Loevner (In re Loevner)*, 167 B.R. 824 (Bankr. E.D. Va. 1994).

[64] *Central Hanover Bank & Trust Co. v. Herbst*, 93 F.2d 510, 512 (2d Cir. 1937) (emphasis in original).

[65] COLLIER, *supra* note 63, at ¶ 523.10[b].

[66] *Id.*; *Republic of Rwanda v. Uwimana (In re Uwimana)*, 274 F.3d 806 (4th Cir. 2001); *Tudor Oaks Ltd. P'ship v. Cochrane (In re Cochrane)*, 124 F.3d 978 (8th Cir. 1997); *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182 (9th Cir. 1996).   *Cf. Moore v. Pond (In re Pond)*, 2004 Bankr. LEXIS 2165, at *6 (Bankr. D. Del.

argues that, given the principles that debts arising from breach of ordinary care are normally dischargeable in bankruptcy and that exceptions to discharge are strictly construed in favor of the debtor, some degree of culpability should be required to make a debt non-dischargeable as a defalcation under section 523(a)(4).[67]  The second view is that defalcation requires negligent conduct on the part of the fiduciary.[68]    The third view is that defalcation requires reckless conduct by the fiduciary.[69]    These views on defalcation are only provided for contextual purposes; the Court does not decide today which view (if any) it will follow, as will be discussed, *infra*.

Federal law governs the definition of the term "fiduciary" as used in section 523(a)(4).[70]    The qualification that the debtor be acting in a fiduciary

---

2004) ("[F]or a debt to be nondischargeable under § 523(a)(4) money or property must be misappropriated or converted while acting in a fiduciary capacity.  [No intent is necessary.]").

[67] COLLIER, *supra* note 63, at ¶ 523.10[b].

[68] *Antlers Roof-Truss & Builders Supply v. Storie (In re Storie)*, 216 B.R. 283 (B.A.P. 10th Cir. 1997).

[69] *Schwager v. Fallas (In re Schwager)*, 121 F.3d 177 (5th Cir. 1997); *Meyer v. Rigdon*, 36 F.3d 1375 (7th Cir. 1994); *see also Rutanen v. Baylis (In re Baylis)*, 313 F.3d 9, 20 (1st Cir. 2002) (appearing to adopt standard of requiring a state of mind "close to . . . extreme recklessness.").

[70] In the case of *Chapman v. Forsyth*, 43 U.S. 202, 11 L. Ed. 236 (1844), the Supreme Court narrowly interpreted the term "fiduciary" as it was used in a similar provision in the Bankruptcy Act of 1841.  The court held that "[i]n almost all the commercial transactions of the country, confidence is reposed in the punctuality and integrity of the debtor, and a violation of these is, in a commercial sense, a disregard of a trust.  But this is not the relation spoken of in the [Bankruptcy Act] . . . .  The act speaks of technical trusts, and not those which the law implies from the contract."  *Chapman*, 43 U.S. at 208.  Almost a decade later in *Davis v. Aetna Acceptance Co.*, 55 S. Ct. 151 (1934), the Supreme Court refined and further narrowed the concept of a fiduciary articulated in *Chapman*.  The court made clear that the technical trust required by *Chapman* must exist prior to the act creating the debt and without reference to that act.  *See Upshur v. Briscoe*, 11 S. Ct. 313, 317 (1890).  The *Aetna* court stated that "[i]t is not enough that by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee ex maleficio.  He must have been a trustee before the wrong and without reference thereto.  In the words of Blatchford, J., 'The language would seem to apply only to a debt created by a person who was already a fiduciary when the debt was created.'"  *Aetna Acceptance*, 55 S. Ct.

capacity has consistently, since its appearance in the Act of 1841, been limited in its application to what may be described as technical or express trusts, and not to trusts *ex maleficio* that may be imposed because of the very act of wrongdoing out of which the contested debt arose.[71]  Thus, an exception to discharge cannot be based upon a constructive or implied trust.[72]  The trust must have existed prior to the wrongdoing from which the debt arose.[73]

Although federal law governs the determination of whether a person or entity is a "fiduciary," courts have found that the existence of a state statute or common law doctrine imposing trust-like obligations on a party may, at least in some circumstances, be sufficient to create a technical trust relationship that bars the discharge of a debt under section 523(a)(4).[74]  For purposes of section

at 154 (internal citations omitted).  Since the Supreme Court has repeatedly made clear that the concept is limited to technical trusts, the Court will employ the *Chapman/Aetna Acceptance* definition of "fiduciaries."  *See Angelle v. Reed*, 610 F.2d 1335, 1341 (5th Cir. 1980) (reaching this conclusion with regard to the definition of "fiduciary" under the prior version of section 523(a)(4), section 17a(4)).

[71] *Aetna Acceptance*,55 S. Ct. at 154; COLLIER, *supra* note 98, at ¶ 523.10[d]; *Lewis v. Short (In re Short)*, 818 F.2d 693 (9th Cir. 1987); *Carlisle Cashway, Inc. v. Johnson (In re Johnson)*, 691 F.2d 249 (6th Cir. 1982); *Runnion v. Pedrazzini (In re Pedrazzini)*, 644 F.2d 756 (9th Cir. 1981); *Carey Lumber Co. v. Bell*, 615 F.2d 370 (5th Cir. 1980); *Angelle*, 610 F.2d 1335; *Am. Ins. Co. v. Lucas (In re Lucas)*, 21 B.R. 585 (Bankr. W.D. Pa. 1982); *aff'd*, 41 B.R. 923 (W.D. Pa. 1984).

[72] *Angelle*, 610 F.2d at 1339; *Martin v. Wilmington Trust Co. (In re Martin)*, 35 B.R. 982, 985 (E.D. Pa. 1984); *Nat'l Bank of Detroit v. Olson (In re Olson)*, 9 B.R. 52, 55 (Bankr. E.D. Wis. 1981); *Hall v. Cooper (In re Cooper)*, 30 B.R. 484, 489 (B.A.P. 9th Cir. 1982).

[73] *Aetna Acceptance*, 55 S. Ct. at 154; *Martin*, 35 B.R. at 985 (internal citations omitted); COLLIER, *supra* note 63, at ¶ 523.10[d]; *In re Casey*, 181 B.R. 763 (Bankr. S.D.N.Y. 1995).

[74] COLLIER, *supra* note 63, at ¶ 523.10[d]; *Quaif*, 4 F.3d 950 (insurance agent); *In re Manley*, 135 B.R. 137 (Bankr. N.D. Okla. 1992) (building contractor); *Rhode Island Lottery Comm'n v. Cairone (In re Cairone)*, 12 B.R. 60 (Bankr. D.R.I. 1981) (lottery sales agent); *Martin*, 32 B.R. at 987 (citing *Carlisle Cashway*, 691 F.2d 249 (debt nondischargeable under [an earlier version of section 523(a)(4)] where the Michigan Building Contract Fund Act imposed a "trust" upon a building contract fund) and *Carey Lumber*, 615 F.2d 370 (debt nondischargeable under [an earlier version of section 523(a)(4)] due to fiduciary liability imposed by Oklahoma Lien Trust Statutes which imposed a

523(a)(4), the applicable state law creating a fiduciary relationship must clearly outline the fiduciary duties and identify the trust property; if state law does not clearly and expressly impose trust-like obligations on a party, the court should not assume that such duties exist and should not find that there was a fiduciary relationship.[75]   The elements of an express trust are a competent settlor and trustee, intent, sufficient words to create a trust, an ascertainable trust res, certain and ascertained beneficiaries, a legal purpose, and a legal term.[76]

The relevant Delaware statute is located at Title 6, Chapter 35 of the Delaware Code.[77]  Title 6, Section 3502 provides that,

> *All moneys or funds received by a contractor in connection with a contract for the erection, construction, completion, alteration or repair of any building or for additions to a building* and all moneys or funds received by a contractor in connection with a contract for the sale of land and the erection, construction, completion, alteration or repair of any building or addition thereon, *shall be trust funds in the hands of the contractor.*[78]

A "contractor" is defined to include a "person, who enters into any contract with another person to furnish labor and/or materials in connection with the erection, construction, completion, alteration or repair of any building or for additions to a

---

trust on funds held for renovation and improvements on realty)).  *But see Matter of Marchiando*, 13 F.3d 1111 (7th Cir. 1994) (lottery agent not a "fiduciary").

[75] COLLIER, *supra* note 63, at ¶ 523.10[d]; *Johnson v. Woldman*, 158 B.R. 992 (N.D. Ill. 1993).

[76] 90 C.J.S. *Trusts* § 17 (2009).

[77] 6 Del. C. §§ 3501-3509.

[78] 6 Del. C. § 3502 (emphasis added).

building, by such contractor . . . ."[79]   A "person" is defined as including "a

natural person."[80]  "Moneys or funds" are defined as including,

> the entire amount of all moneys or funds received by a contractor, as
> defined in this section, who . . . receives from the other contracting party
> or vendee any deposit or sum of money on account of the purchase or
> contract price, and no part of such moneys or funds shall be deemed
> or construed applicable to the payment of the cost or selling price
> of land, unless that part of the contract price or selling price
> applicable to cost or selling price applicable to cost or selling price
> of land, be specifically so stated in the contract.[81]

Under section 3503, contractors may not:

> pay out, use or appropriate any moneys or funds described in
> § 3502 of this title until they have first been applied to the payment
> of the full amount of all moneys due and owing by the contractor to
> all persons . . . furnishing labor or material . . . for the erection,
> construction, completion, alteration or repair of, or for additions to,
> such building, whether or not the labor or material entered into or
> became a component part of any such building or addition and
> whether or not the same were furnished on the credit of such
> building or addition or on the credit of such contractor.[82]

A violation of section 3503 is made a criminal offense by section 3504,[83]

subject to the penalties set forth in section 3505.[84]

---

[79] 6 Del. C. § 3501(2).

[80] 6 Del. C. § 3501(5).

[81] 6 Del. C. § 3501(3) (emphasis added).

[82] 6 Del. C. § 3503.

[83] 6 Del. C. § 3504; *Dave Hall, Inc. v. H & H, Inc.*, 1980 WL 6427, at *1 (Del. Ch. 1980).  Section 3504 provides, in pertinent part: "Failure of a contractor, or an agent of a contractor, to pay or cause to be paid, in full or pro rata, the lawful claims of all persons, firms, association of persons or corporations (including surveyors and engineers), furnishing labor or material (including fuel), as required by § 3503 of this title, within 30 days after the receipt of any moneys or funds for the purposes of § 3502 of this title, shall be prima facie evidence of the payment, use or appropriation of such trust moneys or funds by the contractor in violation of the provisions of this chapter."

[84] 6 Del. C. § 3505 provides, in pertinent part:  "Whoever, being a contractor, or any agent of a contractor, pays out, uses or appropriates, or consents to the paying out, use or appropriation of

In evaluating an earlier version of the statute, the Court of General Sessions of Delaware, New Castle County, held that,

> [t]he statute has for its object both the protection of the owner whose property, by reason of the implied agency of the contractor, may be made liable for sub-contracts, labor or material furnished for the building, and to give additional protection to the sub-contractors, laborers or materialmen engaged upon the building.[85]

Furthermore, the Delaware Court of Chancery found that "this language [of the earlier statute] does not create a trust in the true sense of that term, [but] the statute when read as a whole *clearly creates a fiduciary relation of that nature between the contractor and the owner*."[86]  The United States District Court for the Eastern District of Pennsylvania analyzed this statute and made a similar finding.[87]  Both public and private parties have brought lawsuits for violations of this statute and/or its earlier versions.[88]

This Court finds that Title 6, Chapter 35 satisfies the express or technical trust requirements of section 523(a)(4).   Under the statute, the settlor is the

---

any moneys or funds received for any of the purposes specified in § 3502 of this title, prior to paying in full or pro rata to the extent of the moneys or funds so received, all of the lawful claims of all persons (including surveyors and engineers) furnishing labor or materials (including fuel), as prescribed by § 3503 of this title, shall be fined not more than $1,000 or imprisoned not more than 3 years, or both."

[85] *State v. Tabasso Homes*, 3 Terry 110, 42 Del. 110, 28 A.2d 248, 253 (Del. Gen. Sess. 1942).

[86] *Maull v. Stokes*, 31 Del. Ch. 188, 68 A.2d 200, 202 (Del. Ch. 1949) (emphasis added).

[87] *See Martin*, 35 B.R. at 988 ("We find that the Delaware statute at issue in this case [Del. C. §§ 3501-3505] is sufficiently similar to those found in [*Carlisle Cashway*] and [*Carey Lumber*] and consequently, the statute has vested the debtors with the obligations of fiduciaries.").

[88] *See Tabasso Homes*, 28 A.2d 248 (Delaware state government indicting home building corporation for violating earlier version of 6 Del. C. §§ 3501-3505); *Martin*, 35 B.R. 982 (Bank initiated adversary proceeding against debtor to declare debt nondischargeable under 6 Del. C. §§ 3501-3505).

person providing the contractor with the moneys or funds, while the contractor is the trustee.[89]  The trust relationship is unambiguously imposed on a contractor by the language of the statute.[90]  The trust *res* is defined as the moneys or funds the contractor receives for the building contract fund.[91]  The statute exists to benefit the owner of the property in question, as well as the sub-contractors, laborers, or materialmen working on the property.[92]  The trustee is charged with the duty not to use such moneys or funds for any purpose other than to pay those persons furnishing labor or material for the improvement of the property, until those persons have been paid in full.[93]

Although in this case there was no trust agreement between the Crowes and the Debtor, this is an inherent feature of a statutory trust.[94]  The parties became constructively charged with an intent to create a trust relationship by making a contract subject to Title 6, Chapter 35.[95]  Furthermore, the Debtor's fiduciary duties existed independently of any contractual obligations because the duties did not arise until the Crowes made payments to him.  These duties did not result from the Debtor's contractual agreements; they only become effective as a result of Delaware law.

---

[89] *See* 6. Del. C. § 3502.

[90] *See* 6. Del. C. § 3503.

[91] *See* 6. Del. C. § 3502.

[92] *Tabasso Homes*, 28 A.2d at 253.

[93] 6 Del. C. § 3503.

[94] *See In re Kawczynski*, 442 F. Supp. 413, 417 (W.D.N.Y. 1977).

[95] *Id.*

The Court notes that Title 6, Chapter 35 imposes fiduciary duties under section 523(a)(4), even though it has provisions imposing criminal penalties or incarceration. Courts that have dealt with statutes that impose *only* criminal or other penalties on a general contractor have refused to find a fiduciary relationship within the scope of an earlier version of section 523(a)(4).[96] Under these statutes, the statutory trust arises only upon the act of misappropriation and cannot be said to exist prior to the wrong and without reference to it, even though a technical or express trust may exist at that time.[97] The rationale is that through "the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee *ex maleficio*. He must have been a trustee before the wrong and without reference thereto."[98] Otherwise, any diversion of funds punishable by a criminal statute would give rise to a nondischargeable debt under section 523(a)(4).

However, the statute in question differs from those discussed above because it does not *only* impose criminal or other penalties on a general contractor for misappropriating funds. It also *explicitly* imposes fiduciary duties upon a contractor who receives such funds. Under Title 6, Chapter 35, a contractor's fiduciary obligations arise *before* the defalcation occurs – and

---

[96] *See Carlisle Cashway*, 691 F.2d at 253 (citing P*edrazzini*, 644 F.2d 756; *Angelle*, 610 F.2d 1335; *Devaney v. Dloogoff (In re Dloogoff)*, 600 F.2d 166 (8th Cir. 1979); *Schlecht v. Thornton (In re Thornton)*, 544 F.2d 1005 (9th Cir. 1976)) (emphasis added). *But see Allen v. Romero (In re Romero)*, 535 F.2d 618 (10th Cir. 1976).

[97] *Id*.

[98] *Martin*, 35 B.R. at 988 (quoting *Aetna Acceptance*, 293 U.S. at 333).

28

therefore, the contractor is a "trustee before the wrong and without reference [to it]."[99]   In addition, the existence of civil liabilities arising from the statute weighs in favor of using the statute as a predicate for excepting a debt from discharge under section 523(a)(4).[100]   Under an earlier version of Title 6, Chapter 35, relief on a civil action was granted to a creditor in the form of the equitable remedy for accounting.[101]   For these reasons, the Court finds that Title 6, Chapter 35 satisfies the express or technical trust requirements of section 523(a)(4).

Based upon these findings, the Court holds that the Crowes have stated a valid claim to relief under section 523(a)(4).   The Bankruptcy Complaint alleges that "[The Crowes] and [the Debtor] entered into a Contract for [the Debtor] to provide labor and materials for the improvement of [the Crowes's] home . . . ."   The Bankruptcy Complaint also alleges that "[the Crowes] have paid [the Debtor] $68,000.00 on account of the Contract price."   The Bankruptcy Complaint then alleges that under Title 6, Chapter 35 of the Delaware Code, "all monies paid from [the Crowes] to [the Debtor] were paid . . . in trust to be used for the payment of the cost of labor and materials provided or to be provided for the project," and that Title 6, Chapter 35 "created a fiduciary relationship between [the Crowes] and [the Debtor] whereby [the Debtor] was a fiduciary to ensure

---

[99] *Aetna Acceptance*, 293 U.S. at 333.

[100] *Martin*, 35 B.R. at 988-89.

[101] *Maull*, 68 A.2d 200.

that any monies paid to him were used for the purpose of paying for labor and materials for the improvement of the home."

The Bankruptcy Complaint also alleges the Debtor breached his fiduciary duties:

> In breach of the trust provisions of 6 Del. C. Chapter 35 [sic] and contrary to direct representations [the Debtor] made to [the Crowes] that he had used those funds to purchase materials that were not yet delivered to the job site, [the Debtor] used funds [the Crowes] paid to him personally rather than to pay for labor and materials for the project.

One can infer from this allegation that the Debtor intentionally or knowingly used the Crowes's funds for his own personal use, rather than accidentally. The Bankruptcy Complaint alleges that "contrary to direct representations [the Debtor] made to [the Crowes] that he had used those funds to purchase materials that were not yet delivered to the job site, [the Debtor] used funds [the Crowes] paid to him personally rather than to pay for labor and materials for the project." As discussed above, when one reads this allegation in conjunction with the allegation that "[the Debtor's] representations . . . were false and [the Debtor] knew they were false at the time he made them," one can reasonably infer that the Debtor intentionally lied to the Crowes so that he could continue using their payments for his personal needs. If the Debtor intentionally lied to the Crowes for this purpose, then one can also reasonably infer the Debtor intended (or at least was aware that he was going) to spend the Crowes's money on his personal needs. This intentional or knowing breach of fiduciary duty should be enough to

satisfy all three views regarding the level of culpability necessary to commit a defalcation under section 523(a)(4).[102]

The Crowes support their argument that the Debtor committed a defalcation by alleging that they are "aware of at least three sub-contractors (the painter, the drywaller, and the dumpster provider) who provided labor and materials for the house for which [the Crowes] paid [the Debtor], that [the Debtor] has not paid."  Finally, the Crowes allege that they suffered $52,635.00 in damages, in part due to the Debtor's breach of fiduciary duty.  Assuming all of these allegations are true, the Crowes have satisfied all of the elements to prove defalcation while acting in a fiduciary capacity under section 523(a)(4).

Furthermore, the Bankruptcy Complaint has pleaded sufficient factual content to allow the Court to draw the reasonable inference that the Debtor is liable for breach of fiduciary duty.  The allegation that the Debtor did not use the funds to pay his sub-contractors and satisfy his fiduciary obligations is supported by the allegation that the Debtor has not paid at least "three sub-contractors (the painter, the drywaller, and the dumpster provider) who provided labor and materials for the house for which [the Crowes] paid [the Debtor]."  Furthermore, the Crowes specified the exact amount of money they gave to the Debtor to hold in trust.  These statements lead to this Court's conclusion that the Bankruptcy Complaint has stated "a claim to relief that is

---

[102] *See* notes 65-69, *supra.*

plausible on its face."[103]   Therefore, the Court will deny the Debtor's motion to dismiss the Bankruptcy Complaint as to the section 523(a)(4) claim.

### VI. Should The Debtor Be Awarded Attorneys' Fees and Costs Because The Filing Of The Bankruptcy Complaint Was Not Substantially Justified?

Section 523(d) provides that,

> If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such a debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.[104]

Congress enacted section 523(d) to discourage creditors from initiating false financial statement exception to discharge actions in the hopes of obtaining a settlement from an honest debtor anxious to save attorney's fees.[105]  Generally, to prevail on a motion for attorneys' fees under section 523(d), the debtor must prove that the creditor brought a dischargeability complaint with respect to a consumer debt and that the debt was discharged;[106] the creditor in such a case can defeat the motion by establishing that its non-dischargeability action had a reasonable bases in law and fact, or that there were special circumstances.[107]

---

[103] *Twombly*, 127 S. Ct. at 1974.

[104] 11 U.S.C. § 523(d).

[105] H.R. REP. NO. 989, 95th Cong., 2d Sess. 80 (1978).

[106] COLLIER, *supra* note 63, at ¶ 523.27.

[107] *Id.*; *Am. Sav. Bank v. Harvey (In re Harvey)*, 172 B.R. 314, 318 (B.A.P. 9th Cir. 1994).

The Court will deny the Debtor's request for costs and attorneys' fees.  The analysis above demonstrates that the Crowes's objection to discharge should not be denied at this stage of the adversary proceeding.  Assuming the allegations in the Bankruptcy Complaint are all true, the Crowes's objection is meritorious.  Therefore, section 523(d)'s requirements are not met.

## CONCLUSION

For the foregoing reasons, the Court finds that neither *res judicata* nor collateral estoppel preclude the Crowes from maintaining this adversary proceeding against the Debtor.  Furthermore, the Court finds that the Bankruptcy Complaint states valid claims for relief under section 523(a)(2) and (a)(4).  Accordingly, the Court will deny the Debtor's motion to dismiss.  The Court will also deny the Debtor's motion for attorneys' fees and costs.  An order will be issued.